1  Alan E. Wisotsky (SBN 68051)
   Jeffrey Held (SBN 106991)
2  LAW OFFICES OF ALAN E. WISOTSKY
   300 Esplanade Drive, Suite 1500
3  Oxnard, California  93036
   Tel:    (805) 278-0920
4  Fax:    (805) 278-0289
   E-mail:  lawyers@wisotskylaw.com
5
   Attorneys for Defendant CITY OF OXNARD
6

7

8                  **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11  J.W., a Minor, through her      )   No. CV 07-06191 GPS (SHx)
    Guardian Ad Litem, Mark        )
12  Wilson; MARK D. WILSON,        )   **NOTICE OF HEARING OF MOTION**
    as Guardian Ad Litem of J.W.,  )   **AND MOTION TO COMPEL PRODUC-**
13                                  )   **TION OR, IN THE ALTERNATIVE,**
             Plaintiffs,            )   **FOR PROTECTIVE ORDER; JOINT**
14                                  )   **DISCOVERY STIPULATION IN**
        v.                          )   **ACCORDANCE WITH CENTRAL**
15                                  )   **DISTRICT LOCAL RULE 37-2.1;**
    CITY OF OXNARD, MARTIN POLO,    )   **DECLARATION OF JEFFREY HELD**
16  and DOES 1 through 10,          )
    Inclusive,                     )   Date :   June 23, 2008
17                                  )   Time :   2:00 p.m.
             Defendants.            )   Ctrm :   550 Roybal
18                                  )
                                    )   Trial: 10/14/08
19                                  )   Discovery deadline: 8/4/08
                                    )   Pretrial conference: 9/22/08
20  _____ )

21

22       IT IS HEREBY STIPULATED by and between the parties to this

23  litigation, J.W., a minor, through her guardian ad litem, Mark

24  Wilson, and defendants City of Oxnard and Martin Polo, as evidenced

25  by the signatures of their counsel below, with regard to their

26  discovery dispute, as follows.

27  / / /

28  / / /

                              1

**I.**

**STIPULATIONS**

1.    This action involves a claim by the minor female plaintiff that the individual defendant sexually violated her on one occasion, while in the course and scope of his employment with the entity defendant, in mid August of 2006.

2.    Plaintiff has served upon the entity defendant two sets of discovery relating to production of documents.    The first request for documents from plaintiff to the City of Oxnard was served on February 27, 2008, and consists of 27 production classifications.    The second request for production of documents from the plaintiff to the City of Oxnard was served on March 27, 2008, and consists of 74 document production classifications (beginning with No. 28 due to consecutive numbering).

3.    Due to the highly sensitive nature of the materials sought, which go far beyond ordinary police officer personnel records, the parties have made a number of agreements:

(a)   Defendant City of Oxnard would produce all documents and items as to which no claim of privilege is made, this being done as to some of these at the early meeting of counsel on January 24, 2007, and others on April 30, 2008;

(b)   Documents and items pertaining to the individual defendant, at his counsel's request, and other documents and items claimed by the entity defendant to be privileged, have not been produced;

(c)   Defendant City of Oxnard is operating under an open extension of time from the plaintiff within which to produce all items and documents called for by the two production demands and

1  within which to respond, ended by the Court's resolution of the
2  dispute;

3         (d)  The highly sensitive nature of the documents and
4  items, coupled with their complexity, made preparation of a privi-
5  lege log or inventory impossible;

6         (e)  *In camera* review is strongly indicated and jointly
7  requested by all counsel.

8     4.   Plaintiff strongly believes that the records sought are
9  crucial to prosecuting the case, as to *Monell* issues, exemplary
10 damage issues, and potential evidentiary admissibility issues, the
11 nature of which plaintiff cannot anticipate without having seen the
12 documents.

13    5.   The municipal defendant holds investigative materials of
14 a highly discreet nature trenching deeply upon the intimate asso-
15 ciational privacy rights of uninvolved third persons, which it is
16 bound, at its peril, to sacrosanctly preserve inviolate.

17    6.   The parties therefore find themselves in a conundrum at
18 the crossroads of the rights of uninvolved third persons' intimate
19 privacy rights and plaintiff's need to obtain evidence to advance
20 various litigation issues.  Therefore, the parties wish to brief
21 their positions in order to enable the Court to decide the issue of
22 full nondisclosure of any of the records, full disclosure of all of
23 the records, or disclosure with conditions.

24    7.   Complete and accurate photocopies of the two document
25 production demands are appended hereto as Exhibits A and B.  The
26 production classifications implicating the dispute of the parties
27 are self-evident and are not disputed by the parties.  In the first
28 production classification, these are Request Nos. 1 through 8, 13,

15, 16, 21, 22, 23 (due to plaintiff's erroneous numbering, there are actually two No. 23 production classifications, both of which are in issue), 24, 25, and 26.

8.   Concerning the second document production, the production classifications as to which there is dispute are Nos. 28, 32, 33, 42, 43, 45, 49, 51, 52, 53, 55, 57, 58, 59, 60, 61, 62, 64, 65, and 66.

9.   The parties have agreed that due to this discovery dispute, the obligation of the City of Oxnard to respond to the entirety of the plaintiff's two document requests is held in abeyance pending a court ruling on the issue, although defendant City of Oxnard has done its best to produce as many of the un-privileged items not in dispute as it can before this Court rules.

10.   The parties therefore join in requesting the Court to review this stipulation and the three argument sections of the plaintiff, the individual defendant, and the entity defendant which follow, and to conduct an *in camera* hearing, with the entity defendant's liaisons from the Oxnard Police Department present, to determine which, if any, of the documents should be produced and upon what terms and conditions.

11.   Plaintiff has served a number of deposition notices seeking the testimony of several Oxnard police officers.  These officers cannot speak unless this Court determines that they may. Otherwise, they would be doing indirectly what they cannot do directly — address the intimate activities of non-party persons and reveal confidential peace officer personnel records.  The parties therefore require a resolution of this issue as well.

/ / /

## II.

### DISAGREEMENT:   IN CAMERA ATTENDEES

The parties have reached an impasse with respect to a single procedural disagreement.  Plaintiff's counsel believes that he and his co-counsel, Ya'el Trock, not of record, ought to be able to be present to examine the disputed items and make an in camera sealed record.  They claim they could not make a focused, intelligent argument geared toward specific items never having seen them.  They claim that by being barred from in camera attendance, they are reduced to taking shots in the blind, nothing more than that.

Counsel for the individual defendant adamantly opposes plaintiff's counsels' in chambers attendance.  She believes that their presence would completely vitiate the purpose of the in camera review.  Once having seen everything, plaintiff's counsel are placed on the scent, as it were.  They cannot help but utilize their newfound knowledge to guide discovery, argument and examination, notwithstanding a denial of the discovery or an admonition to the contrary.  They would merely profit from something the Court might determine they ought never to have seen in the first place.

Counsel for Oxnard favors yet a third approach.  He would not oppose plaintiff's counsels' attendance in a due process concern that they be able to know the subject matter of the dispute.  Yet he would so agree only if the Court admonished and ordered them to retain the full confidentiality of all materials mentioned in camera, not to reference them or their contents directly or indirectly, and to file any appeal documents under seal or without reference to names and specifics of documents and items reviewed in

1  camera.

2                                **III.**

3                     **ARGUMENTS OF THE PARTIES**

4  **A.    Plaintiff's Arguments in Favor of Disclosure**

5       Plaintiff in this case was a 12-year-old minor at the time of

6  the underlying incident herein. She was *sexually assaulted and*

7  *raped* by Defendant Officer Martin Polo in the "Beat 21" Storefront

8  Substation of the Oxnard Police Department. The minor had called

9  Officer Polo for assistance, and Officer Polo improperly picked her

10 near her mother's house, and drove her to said Substation.   At

11 first Defendant Officer Polo offered the child money to engage in

12 sex with him, and when the minor refused, he proceeded to sexually

13 force himself on her.

14       Plaintiff also alleges that Defendant City of Oxnard failed to

15 properly supervise, train and discipline Officer Polo prior to the

16 incident.

17       Plaintiff has had a difficult time dealing with and overcoming

18 the memory of the incident, and is presently in a lock-down

19 facility in Utah where she receives psychological care for her

20 emotional trauma and mental needs.

21       Just not long ago, the District Attorney's Office declined to

22 prosecute the individual defendant for crimes stemming from the

23 substance of plaintiff's allegations.  The prosecutorial declina-

24 tion was formulaically premised upon insufficient evidence to prove

25 culpability beyond a shadow of a doubt.  There was no indication of

26 inability to surmount the decidedly lower civil proof burden.

27       In fact, a videotape of a woman by the name of A. J. Who

28 claimed to have had sexual intercourse with defendant Polo at the

Beat 21 storefront substation was found in Polo's residence making
the plaintiff's allegations stronger as to the use of the
substation for sexual purposes.  The district attorney never stated
that nothing relevant was found in Polo's residence pursuant to the
search warrant.

It appears that the isolated and private nature of the
Substation allowed and facilitated several officers including
Defendant Polo to engage in sexual trysts with various women.
Fed. R. Civ. P. 26(b)(1) provides that:

> "Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any
> party's claim or defense - including the
> existence, description, nature, custody,
> condition, and location of any documents or
> other tangible things and the identity and
> location of persons who know of any
> discoverable matter. For good cause, the court
> may order discovery of any matter relevant to
> the subject matter involved in the action.
> Relevant information need not be admissible at
> the trial if the discovery appears reasonably
> calculated to lead to the discovery of
> admissible evidence. ..."

Therefore, admissibility is not determinative on what is
discoverable, but discovery is much more **expansive and broad**, and
admissibility should not be an impediment to discovery unless the
information sought can have no possible bearing whatsoever on the
subject matter of the action.

7

It is well established that **personnel files** may be discovered in police misconduct cases. For example, in <u>Hampton v. City of San Diego</u> 147 F.R.D. 227 (S.D. Cal. 1993), the Court discussed the discoverability of personnel files of individual defendants police officers, *as well as non-defendant police officers*. The Court stated regarding party-defendants that:

> "This court believes that such files are relevant to the allegations in this lawsuit. Information contained in these files may be relevant on the issues of credibility, notice to employer, ratification by employer and motive of the officers. Further, information concerning other instances of misconduct may also be relevant on the issues of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent." <u>Id</u>. at 229.

The <u>Hampton</u> court, supra, continued to state regarding *non-party* individuals that:

> "Such documents may be relevant to plaintiffs' claims against the City as relates to its policies of hiring, training, supervision and control. In addition such information may be relevant to the non party officers' credibility and their willingness to intercede during instances of alleged improper conduct of fellow officers." <u>Id</u>. at 229.

The personnel records of Defendant Officer Martin Polo are

1   very likely to contain materials relevant to Plaintiff's Section
2   1983 claim for relief. For example, they may contain complaints
3   against Officer Polo, disciplinary actions taken, internal
4   investigation materials, and supervisory evaluations. These
5   materials are most likely to be relevant on claims of municipality
6   and supervisory liability, as well as issues of punitive damages
7   against Officer Polo.

8       Documents of **prior bad acts** of Officer Polo may prove that
9   Defendant City of Oxnard was on notice of Officer Polo's propensity
10  to engage in misconduct and failed to properly supervise or
11  discipline him, and that using the police substation for sex was a
12  *routine practice* by officers of the City of Oxnard Police
13  Department, as allowed pursuant to Fed. R. Evid. Rule 406.

14      Further, evidence of prior bad acts of Officer Polo can also
15  be used to prove punitive damages against Officer Polo. Hampton v.
16  City of San Diego 147 F.R.D. 227, 229 (S.D. Cal. 1993): "Further,
17  information concerning other instances of misconduct may also be
18  relevant on the issues of punitive damages, in that the information
19  may lead to evidence of a continuing course of conduct reflecting
20  malicious intent".

21      Additionally, prior bad acts of Officer Polo may be critical
22  to establish his *habit* to engage in sexual intercourse at the
23  police substation, where Plaintiff was raped by him. Such evidence
24  is allowed to prove action in conformity with regard to Plaintiff
25  as well. Fed. R. Evid. Rule 406.

26      In fact, in Wood v. Brier 54 F.R.D. 7 (E.D. Wis. 1972) and in
27  Frankenhauser v. Rizzo 59 F.R.D. 339 (E.D. Pa. 1973), two seminal
28  cases in the area of police misconduct discoverability, the courts

1  allowed a very liberal approach to discoverability of police
2  officers' **personnel files and investigation materials.**
3        In King v. Conde 121 F.R.D. 180 (E.D.N.Y. 1988), another
4  seminal case that deals with police officers personnel files at
5  length, the Court held that police officers personnel files
6  containing **citizen's complaints and internal investigatory**
7  **materials** are subject to disclosure. The Court stated that:

8                  "Most information requested by civil rights
9                  plaintiffs in these lawsuits [against law
10                 enforcement officers] deals with professional
11                 personnel records, such as prior involvement
12                 in disciplinary proceedings or citizen
13                 complaints filed against officers. The privacy
14                 interest in this kind of professional record
15                 is not substantial, because it is not the kind
16                 of "highly personal" information warranting
17                 constitutional safeguard. The privacy interest
18                 in nondisclosure of professional records
19                 should be especially limited in view of the
20                 role played by the police officer as a public
21                 servant who must be accountable to public
22                 review. Some requests might touch on
23                 intuitively more private domains, such as on
24                 officer's psychiatric history, but even
25                 disclosures having "some effect on individual
26                 liberty or privacy" because of their personal
27                 nature are permissible when disclosure serves
28                 important public concerns." Id. at 191.

1    The <u>King</u> Court, supra, also stated that: "[T]he more pervasive

2  hypothetical is that disclosure will have no influence on citizen

3  complaints." <u>Id</u>. at 193.

4    Moreover, in <u>Fiacco v. City of Renneselaer</u> 783 F.2d 319 (2nd

5  Cir. 1986), the court found that evidence of **third party claims**

6  against the municipality, and how they were handles, is relevant to

7  prove a deliberate indifference by the municipality. Similarly,

8  third party claims can show that the City of Oxnard displayed

9  deliberate indifference as well.

10    Furthermore, in <u>Scouler v. Craig</u> 116 F.R.D. 494, 496, (D.N.J.

11  1987), the Court found that **complaints and investigation materials**

12  are subject to disclosure. The Court also found that **supervisory**

13  **evaluations** are also subject to disclosure given the potential

14  probative value of supervisory evaluations on issues of supervisory

15  and municipal liability, unless there is a strong showing that

16  confidentiality is vital. See also <u>Dos Santos v. O'Neill</u> 62 F.R.D.

17  448 (E.D. Pa. 1974), <u>Everitt v. Brezzel</u> 750 F.Supp. 1063 (D. Colo.

18  1990).

19    In <u>Smith v. City of New York</u> 611 F.Supp. 1080 (S.D.N.Y. 1985)

20  the Court went as far as to allow the disclosure of **police**

21  **officers' psychological test results**, stating that the officers

22  placed their personalities and propensity for violence at issue and

23  "the social goal of truth ascertainment outweighs any need to

24  preserve confidentiality." <u>Id</u>. at 1098.  See also <u>Siegfried v.</u>

25  <u>City of Easton</u> 146 F.R.D. 98 (E.D. Pa. 1992).

26    Additionally, **Officer Martin Polo's statements to Internal**

27  **Affairs** during the course of the internal investigations are also

28  discoverable similarly to the circumstances discussed in <u>Wong v.</u>

City of New York 123 F.R.D. 481 (S.D.N.Y. 1989) where Plaintiff sought statements made by the officer to internal affairs investigators. The Wong court noted that: "there is little substitute for the contemporaneous information sought even if the sole use to which it is put is cross-examination." Id. at 481. The court clearly rejected defense proposition that the discovery would chill or otherwise negatively affect internal investigative efforts, and allowed the discovery of the self-incriminating statements.

Plaintiff should not be limited to discovery of matters that occurred *prior to* the incident at issue. Evidence of **subsequent incidents** is admissible, and therefore discoverable, going to the existence within the department of pervasive custom and practice. Ismail v. Cohen 899 F.2d 183 (2nd Cir. 1990), Carter v. District of Columbia 795 F.2d 116 (D.C. Cir. 1986), Grandstaff v. Borger 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917 (1987).

With respect to the **Fifth Amendment** that defendant Officer Polo would like to claim, in Baxter v. Palmigiano 425 U.S. 308 (1976) the United States Supreme Court stated that: "the Fifth Amendment does not forbid adverse inferences against parties in civil actions when they refuse to testify in response to probative evidence offered against them" Id. at 318. In fact, a trial judge may instruct the jury that it may infer from the witness's invocation of the Fifth Amendment that the answer, if given, would have been adverse to witness's interest. Brinks v. City of N.Y. 717 F.2d 700 (2nd Cir. 1983), Javid v. Scott 913 F.Supp. 223 (S.D.N.Y. 1996) [where a defendant police officer invoked his Fifth Amendment right].

1      Defendant Polo has argued that plaintiff is on a glorified
2  fishing expedition which should not be permitted.  However, <u>Hickman</u>
3  <u>v. Taylor</u>, 329 U.S. 495 (1947) indicates the court's broad
4  interpretation of what is relevant to the case, stating that "No
5  longer can the time honored cry of fishing expedition serve to
6  preclude a party from inquiring into facts "underlying his
7  opponent's." Id. At 506-507.   Regardless, this honorable court can
8  exclude documents which it deems irrelevant or an improper invasion
9  of privacy during its in camera review.

10      Counsel for defendant Polo cited <u>Thorne v. City of El Segundo</u>,
11  726 F.2d 459 (9th Cir. 1983), cert denied in 469 U.S. 979 (1984),
12  to support Polo's privacy.   However, the <u>Thorne</u> case is easily
13  distinguishable in that it involved an employment matter.   Who
14  fathered the employee was really irrelevant and private.   But in
15  the case at bar, there is a serious allegation of a rape of a 12
16  year old girl by defendant Polo at the police substation.  As such,
17  Polo's credibility and practice of using the police substation for
18  sex, plays a major role in this case.

19      Based upon the foregoing, Plaintiff respectfully requests that
20  her right to discovery would not be infringed upon, or limited by,
21  any claims of privacy since the probative value of the evidence
22  requested by Plaintiff clearly outweighs any privacy rights and is
23  critical to proving her case.

24  **B.**   **<u>Martin Polo's Arguments Against Disclosure</u>**

25      To provide a context for this motion, a brief factual summary
26  is in order.   In this case, Plaintiff J.W. claims that she was
27  sexually assaulted by Oxnard Police Officer Martin Polo on August
28  14, 2006.   When, well after the fact, the plaintiff's allegations

1   came to light and evolved into a claim that she was raped, the

2   Oxnard Police Department conducted an investigation.  During that

3   investigation, the OPD executed a search warrant of Officer Polo's

4   residence and took a number of personal items from his residence.

5   Clearly, the personal items confiscated from Officer Polo's

6   residence did not provide proof of the criminal activity alleged by

7   the plaintiff, because the Ventura County District Attorney has

8   refused to press criminal charges against Officer Polo.

9       In her discovery requests to the City of Oxnard, the plaintiff

10  seeks copies of all items obtained during the OPD's investigation,

11  including all items obtained during the execution of the search

12  warrant of Officer Polo's residence.  In addition, the plaintiff

13  seeks a copy of the entire personnel file of Officer Polo - an

14  individual who has been employed by the OPD for close to twenty

15  years.

16      Officer Polo has <u>no objection</u> to the City of Oxnard disclosing

17  items in discovery that pertain to Plaintiff J.W. or to her

18  allegations that she was sexually assaulted on the date in

19  question.  Obviously, any such items are relevant to the

20  plaintiff's claim. However, Officer Polo objects to the disclosure

21  of any items that pertain to his personal private life and have no

22  connection to Plaintiff J.W., because such a disclosure would

23  constitute an unwarranted invasion of privacy.

24      It is the plaintiff's position that simply because she has

25  filed a lawsuit accusing Officer Polo of such outrageous and

26  socially reprehensible conduct, she should be entitled to carte

27  blanche access to Officer Polo's employment history and personal

28  life.  The plaintiff's request is nothing more than a glorified

fishing expedition, which, even under this Circuit's liberal discovery standards, is not permissible.  Moreover, the request is nothing more than a transparent effort to further impugn the officer's character and prejudice this litigation with ancillary facts and allegations that have no bearing on the central issues of liability.

### 1.   <u>Privacy Considerations</u>

The United States Supreme Court and the Ninth Circuit have both recognized that, under some circumstances there can be such a gross "abuse of privacy" as to amount to an abridgement of funda-mental constitutional guarantees.  <u>See</u> <u>Griswold v. Connecticut</u>, 381 U.S. 479, 485 (1965); <u>York v. Story</u>, 324 F.2d 450, 454-455 (9th Cir. 1963).  Similarly, under California law, "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and **privacy**."   CAL. CONST., art. 1, sec. I. (emphasis added).  This generalized liberty interest includes "the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions."  <u>Whalen v. Roe</u>, 429 U.S. 589, 599-600 (1977).

In <u>Thorne v. City of El Segundo</u>, 726 F.2d 459 (9th Cir. 1983), <u>cert. denied</u>, 469 U.S. 979 (1984), the Ninth Circuit recognized this right to privacy in the context of a police officer.  There, the plaintiff served as a clerk in the El Segundo police department. When she applied to become a police officer with the department, she was subjected to a polygraph interview and was questioned extensively about her sexual history.   When the

1  polygraph interviewer learned that she had been pregnant and had
2  suffered a miscarriage, he asked who the father was.  Thorne told
3  him that the father was a married officer in the department with
4  whom she had had an affair.  Ultimately, Thorne was refused the
5  position, in part because of her relationship with the married
6  officer.  The Ninth Circuit held that the inquiry into Thorne's
7  sexual history violated her right of privacy and freedom of
8  association and "cannot be upheld under any level of scrutiny."
9  <u>Thorne</u>, 726 F.2d at 471.

10       It is respectfully submitted that the plaintiff's intrusive
11 attempts to delve into the personal life of Officer Polo, which
12 does not involve Plaintiff J.W. or her allegations in this action,
13 disclosure of such information would constitute an egregious
14 violation of his right of privacy.  The defense recognizes that the
15 plaintiff has a right to discovery in a civil action.  However,
16 that right is limited to matters that are reasonably calculated to
17 lead to the discovery of admissible evidence.  Accordingly, any of
18 the requested information that does not involve Plaintiff J.W. or
19 relate to Plaintiff J.W. or her allegations against Officer Polo is
20 irrelevant to this lawsuit.

21            **2.   <u>Police Personnel Records</u>**

22       The plaintiff also seeks disclosure of the *entire personnel*
23 *file* of Officer Polo.  The plaintiff hypothesizes that the contents
24 of the officer's personnel files will substantiate her <u>Monell</u> claim
25 by way of unearthing instances of disciplinary action, internal
26 investigations, and supervisory evaluations.  However, the
27 plaintiff makes no effort to limit her request in any way and seeks
28 the entire personnel file, which, theoretically, could include

Officer Polo's personal financial information, psychological evaluations, medical information, insurance information, and discipline for conduct completely unrelated to the allegations in this accident.

In this regard, the defense recognizes that under the Federal Rules of Civil Procedure, a party may obtain discovery regarding any matter that is (1) "not privileged" and (2) "relevant to the subject matter involved in the pending action." FED. R. CIV. P. 26(b)(1). The defense also recognizes that federal discovery authority construes the question of relevancy "liberally and with common sense." Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992).

However, notwithstanding the liberal discovery policies, federal courts have routinely limited disclosure of police officer personnel records. For example, in Segura v. Reno, 116 F.R.D. 42 (D. Nev. 1987), the court found that defendants in a civil rights action against the police department and officers were not required to produce portions of the police department's internal affairs report containing evaluative summaries, disciplinary recommendations and intra-departmental memoranda regarding discipline. Specifically, the court held that such documents were protected by governmental privilege.

Similarly, in Soto v. City of Concord, 162 F.R.D. 603 (N.D. Cal. 1995), the district court held that a plaintiff's request for internal affairs documents concerning the investigation of the **specific incident** described in the complaint were relevant and were not overbroad. The Court concluded that the subject discovery request for internal investigation documents was not overbroad as

to subject matter or time, **because the plaintiff was requesting only those documents that concerned the specific incident in the complaint.** Id. Unlike the plaintiff's request in this case, which seeks complete access to Officer Polo's personnel records, the plaintiff's request in Soto was limited to an internal affairs investigation concerning the particular incident in question.

Furthermore, not only is the plaintiff's request patently overbroad, it also seeks disclosure of information that is protected by the official information privilege. Specifically, "[f]ederal common law recognizes a qualified privilege for official information. (Citation omitted). Government personnel files are considered official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990). In order to determine whether personnel files sought are privileged, courts must weigh potential benefits of disclosure against potential disadvantages; if the latter is greater, the official information privilege may bar discovery. Id. at 1033-34. The balancing test is conducted on an ad hoc, case-by-case basis, determining what weight each relevant consideration deserves in a fact-specific situation that is before the Court. Kelly v. City of San Jose, 114 F.R.D. 653, 667-68 (N.D. Cal. 1987).

In resolving the delicate issue of discovery of police officer personnel records, other jurisdictions have recognized the highly sensitive nature of the information contained within police officer personnel records and have applied a balancing test before ordering disclosure of any type. In Denver Policemen's Protective Association v. Lichtenstein, 660 F.2d 432 (10th Cir. 1981), the Tenth Circuit considered whether and to what extent police officers

1  had a right to prevent disclosure of personal matters within police
2  personnel and investigative files. Id. at 435.  Looking primarily
3  to substantive due process decisions of the Supreme Court, Whalen
4  v. Roe, 429 U.S. 589 (1977) and Nixon v. Administrator of General
5  Services, 433 U.S. 425 (1977), the Court acknowledged the existence
6  of such substantial privacy interests.  The court then adopted the
7  "Colorado test" for determining whether information contained in
8  police and other governmental files is "of such a highly personal
9  or  sensitive  nature  that  it  falls  within  the  zone  of
10 confidentiality."  Flanagan v. Munger, 890 F.2d 1557, 1570 (10th
11 Cir. 1989) (discussing Lichtenstein).  Under this test, the court
12 must  consider,  (1)  if  the  party  asserting  the  right  has  a
13 legitimate  expectation  of  privacy,  (2)  if  disclosure  serves  a
14 compelling state interest, and (3) if disclosure can be made in the
15 least  intrusive  manner.  Lichtenstein, 660 F.2d at 435 (citing
16 Martinelli v. District Court in and for the City and County of
17 Denver, 199 Colo. 163, 612 P.2d 1083, 1091 (1980)).

18      Defendant Officer Martin Polo respectfully requests that this
19 Court engage in a similar balancing test before ordering disclosure
20 of any portion of his personnel file or any information seized from
21 his residence during the execution of the search warrant.  Officer
22 Polo has a legitimate expectation of privacy in his personal life.
23 Furthermore, Officer Polo has a legitimate right to privacy in his
24 personnel  records,  especially  as  a  police  officer,  where  such
25 personnel records contain sensitive personnel information and could
26 potentially  include  items  such  as  psychological  evaluations,
27 medical  information,  etc.  The  defense  recognizes  that  the
28 plaintiff  has  a  right  to  discovery  in  her  civil  litigation.

1    However, simply because the plaintiff has levied charges of the

2    most socially reprehensible nature does not mean that Officer

3    Polo's cloak of privacy afforded by the federal and state

4    constitutions is dropped.  To the contrary, given the nature of the

5    charges, *additional* protections should be afforded to ensure that

6    the discovery process in this litigation does not spiral out of

7    control and lose focus on the sole issue in this litigation:

8    whether Officer Polo raped the plaintiff.

9    **C.    City of Oxnard's Arguments Against Disclosure**

10        The rights of uninvolved third parties must be respected.

11   During its investigation of plaintiff's allegations against the

12   individual defendant, the City police department uncovered

13   materials about physically intimate contacts between the plaintiff

14   and others and the defendant and others.  None of these materials

15   have anything to do with the storefront police station whatsoever.

16   None of them have anything to do with the plaintiff and defendant

17   being intimate with each other.  None have anything to do with the

18   individual defendant being physically intimate or verbally intimate

19   with juveniles.  These uninvolved paramours have rights too, rights

20   which must be respected.  They have no connection whatsoever to the

21   event giving rise to this lawsuit so their relevance is non-

22   existent anyway.

23        Federal courts have authority to issue protective orders.

24   Upon motion by a party responding to a discovery request, a federal

25   court is empowered to issue an order forbidding all or part of the

26   discovery sought, for good cause.  F.R.C.P. 26(c)(1).  A properly

27   asserted right of privilege is good cause for a protective order.

28   Foltz v. State Farm, 331 F.3d 1122, 1130 (9th Cir. 2003).  The

privilege of uninvolved strangers to the facts of the plaintiff's claim of harm at the hands of the individual defendant is that good cause here.

Federal and state appellate authorities establish a sacrosanct wall around the identities and activities of American citizens in their personal and intimate activities.  One of the hallmarks of a free society is that government is not allowed to extract and expose intimate, private activity.

It is indeed fortunate that our appellate authorities, both federal and state, scrupulously honor the intimate private lives of our citizens, or we would not be living in a free society in which the associational activities of its citizens were scrupu-lously respected.  Respect for the identities and harmless activities of individuals in their leisure time is what makes America the envy of the world.

Plaintiff would, by the simple expedient of filing a lawsuit, use it as a battering ram to break down the barrier which protects the constitutional rights of every American citizen in his and her privacy.  As a society, we have progressed so far from Hester Prynne's public ignominy in *The Scarlet Letter.*  Harmless and perfectly legal dalliances no longer need be worn as a scarlet letter around the neck of individual citizens who did nothing to harm anyone.  It would be a terrifying step backward if every private dalliance were exposed to public view by the simple expedient of filing a lawsuit.

It is no doubt salaciously titillating to break into the bedroom of one's fellow citizens to peer into their private lives under the mantle of civil discovery with its moneymaking objective.

1  But this is not what we are about as a society.

2       This case in particular has drawn media attention.  It is
3  receiving hawk-like vigilance and is front-page news.  But the
4  privacy protections imposed by our appellate courts under the aegis
5  of the federal and state Constitutions fortunately stand as a
6  bulwark preventing such intimate disclosures.

7       A point is placed on the privacy privilege sought to be
8  pierced in this matter.  The uninvolved third parties are, in
9  several instances, juveniles, mentally disadvantaged individuals,
10  and persons who have selected a life in public service.

11      The appellate story opens in 1965 with the United States
12  Supreme Court's recognition of a right to intimate privacy,
13  resisting even the reach of the criminal law.  This case has far
14  less compelling interests, because it is a civil, not penal,
15  matter.  In *Griswold v. Connecticut*, 381 U.S. 479 (1965), the high
16  Court held that the Connecticut law forbidding use of
17  contraceptives unconstitutionally intruded upon the right of
18  marital privacy.  The First Amendment contains a penumbra where
19  privacy is protected from government intrusion.  381 U.S. at 483.
20  The specific guarantees in the bill of rights contain penumbras
21  which are emanations from those guarantees which help give them
22  life and substance.  *Id*. at 484.  The letter of the law is
23  important, but the spirit is more important.  The Bill of Rights
24  contains a cross-connected zone of privacy under which government
25  may not force individuals to surrender personal data and sensitive,
26  private information.

27      The next significant Supreme Court development occurred in
28  1972, when the high Court decided *Eisenstadt v. Baird*, 405 U.S. 438

1   (1972).   The Supreme Court held that a Massachusetts statute
2   allowing married couples to purchase contraceptives for the purpose
3   of preventing pregnancy but outlawing distribution of contra-
4   ceptives to single persons for that purpose was violative of the
5   Equal Protection Clause.  The high Court concluded at 453, "If the
6   right of privacy means anything, it is the right of the individual,
7   married or single, to be free from unwarranted governmental
8   intrusion into matters so fundamentally affecting a person as the
9   decision whether to bear or beget a child."

10      Nor has the Ninth Circuit ignored a citizen's fundamental
11  right to privacy in procreative endeavors.  In *Thorne v. City of*
12  *El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983), a plaintiff's prior
13  sexual activities were held protected by the right of privacy.  The
14  court stated:

15              The constitution protects two kinds of
16          privacy interests. One is the individual interest
17          in avoiding disclosure of personal matters, and
18          another is the interest in independence in making
19          certain kinds of important decisions.  Both are
20          implicated in this case.  Thorne presented
21          evidence that defendants invaded her right to
22          privacy by forcing her to disclose information
23          regarding personal sexual matters.  She also
24          showed that they refused to hire her as a police
25          officer based in part on her prior sexual
26          activities, thus interfering with her privacy
27          interest and her freedom of association.
28  726 F.2d at 468 [citations and quotations omitted].

1    The Third Circuit has recognized that a human being's sexual

2  preferences which are neither harmful nor illegal constitute an

3  inherent right of a free citizen.   Human sexual contact is an

4  intimate aspect of an individual's personality.   It is fully

5  entitled to absolute protection from forced disclosure under the

6  constitutional right to privacy in highly sensitive information.

7  In *Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000),

8  the court explained:

9            We can, therefore, readily conclude that

10           Wayman's sexual orientation was an intimate

11           aspect of his personality entitled to privacy

12           protection under *Whalen*.   The Supreme Court,

13           despite the *Bowers* decision, and our court have

14           clearly spoken that matters of personal intimacy

15           are safeguarded against unwarranted disclosure.

16           The zone of privacy, while clearly estab-

17           lished in matters of personal intimacy, is not

18           absolute.   If there is a government interest in

19           disclosing or uncovering one's sexuality that is

20           genuine, legitimate and compelling, then this

21           legitimate interest can override the protections

22           of the right to privacy. In this instance,

23           however, no such government interest has been

24           identified.   Indeed, Wilinsky conceded he

25           would have no reason to disclose this type of

26           sensitive information.

27  232 F.3d at 196 [citations and quotations omitted].

28  / / /

The State of California has expressed a parallel abhorrence at the civil discovery of intimate matters said to further some marginal interest of a party in a civil lawsuit.   In *Boler v. Superior Court*, 201 Cal.App.3d 467 (1987), the court of appeal held that a discovery order compelling a defendant to answer deposition questions concerning his sexual activities with unnamed women who were not parties to the lawsuit impermissibly intruded upon their sexual privacy rights.   *Boler* was a workplace sexual harassment suit.  The superior court entered an order compelling an individual defendant to answer several depositions questions concerning his sexual activities with unnamed women who were not parties to the lawsuit.  The petition for extraordinary relief was granted.  The peremptory writ did issue.  The court of appeal held that the discovery order was impermissibly intrusive upon the sexual privacy rights of the defendant and his non-party companions. 201 Cal.App.3d at 474.  There is a right in American society to sexual privacy exempt from civil discovery.  *Id*.  It is not necessary for a plaintiff trying to prove that he or she was sexually molested or harassed to know the identities of sexual partners who ever happen to have been the individual defendant's paramours or even coworkers.  201 Cal.App.3d at 474.

The state Supreme Court held that there is a right to privacy in California which embraces sexual relations.  *Vinson v. Superior Court*,  43  Cal.3d  833,  841  (1987).   California  accords intimate privacy the constitutional status of an inalienable right even on a par with defending life and possessing property.   *Id*.

In *Vinson*, the issue was the scope of a mental examination of a civil plaintiff.  The defendant wanted the independent examiner

to ask the plaintiff all sorts of embarrassing intimate questions about her relations with other men.  The Supreme Court summarized the argument by writing:

> If we find, as we do, that an examination
> may be ordered, plaintiff urges us to circum-
> scribe its scope to exclude any probing into
> her sexual history, habits, or practices.
> Such probing, she asserts, would intrude
> impermissibly into her protected sphere of
> privacy.  Furthermore, it would tend to
> contravene the state's strong interest in
> eradicating sexual harassment by means of
> private suits for damages.  An examination
> into a plaintiff's past and present sexual
> practices would inhibit the bringing of
> meritorious sexual harassment actions by
> compelling the plaintiff — whose privacy has
> already been invaded by the harassment — to
> suffer another intrusion into her private
> life.

43 Cal.3d at 841.

    The Supreme Court stated, "We cannot agree that the mere initiation of a sexual harassment suit . . . functions to waive all her privacy interests, exposing her persona to the unfettered mental probing of defendants' expert.  Plaintiff is not compelled, as a condition to entering the courtroom, to discard entirely her mantle of privacy."  *Id*.  The *Vinson* court concluded at 842 that the plaintiff had not "merely by initiating this suit for sexual

harassment and emotional distress, implicitly waived her right to privacy in respect to her sexual history and practices. Defendants fail to explain why probing into this area is directly relevant to her claim and essential to its fair resolution." 43 Cal.3d at 842.

The situation is exacerbated because some of the materials sought to be disclosed directly involve juveniles. State law accords juveniles heightened protection from privacy intrusions and maintains inviolate juvenile records. In the case of *In re Keisha T.*, 38 Cal.App.4th 220 (1995), it was held that Welfare and Institutions Code Section 827 protects disclosure of minors' records. The cloak of confidentiality for juvenile records might legitimately be pierced in specific cases, including the rights of a criminal defendant to mount a defense. Disclosure might also be permitted in connection with dependency or delinquency proceedings involving the minor.

In this particular case, defendant City of Oxnard has tried very hard to give the parties, both the individual plaintiff and the individual defendant, a whole host of records which may be subject to discovery and do not violate the rights to intimate privacy of uninvolved third persons. While respect for a protective order prevents use of full names in this document, which will be a public record, defendant City of Oxnard would certainly show the magistrate judge *in camera* the exact early meeting of counsel disclosure containing all of these items. They are attested to in the appended declaration of defense counsel. They will be listed below using only first and last initials to protect the identities of those individuals described therein:

/ / /

1.    One-page e-mail from B.E. to C.T. dated August 30, 2006;

2.    A two-page memorandum from K.K. to S.B. and B.C. dated 9/6/06;

3.    A compact disc containing the digital audio recording of the contact of 9/6/06 between plaintiff and officers E. and K.;

4.    A six-page memorandum from Officer E. to C.T., S.B., and B.C., memorializing Officer E.'s taking of a missing person's runaway report concerning plaintiff on August 16, 2006, dated September 12, 2006;

5.    A five-page Oxnard Police Department follow-up report, RB #07-XXXXX, by S.S., being a transcription of the audio-recorded contact between Officers E., K., and plaintiff on September 9, 2006;

6.    A transcript of the 2/12/07 interview of plaintiff conducted by Oxnard Police Detective S.G. in a suburb of Salt Lake City, Utah, at 9:49 a.m., 53 pages;

7.    Laboratory reports from a company called Crime Scene Technologies, Inc., under date of June 25, 2007, indicating that a submitted textile cutting from plaintiff's panties contained a low-level mixture of deoxyribonucleic acid of three male human beings, analyzing and making conclusions; three pages;

8.    A six-page laboratory report from Crime Scene Technolo-gies, Inc., dated November 7, 2007, concerning two additional textile cuttings, items 01E and 01F, which reveal deoxyribonucleic acid genetic markers donated or contributed by four male human beings;

9.    A 14-page criminal investigation report of the subject allegation by S.G.;

/ / /

10.   Multiple photographs of the alleged location of the perpetrated molestation, taken in connection with the investigation, as well as photos of the police unit the individual defendant was allegedly driving at the time of transporting the plaintiff to the police department, and all photos of the plaintiff taken by the police department;

11.   All missing person or runaway reports concerning the plaintiff in and through mid-August of 2006, including reports numbered 06-XXXXX and 06-XXXXX;

12.   Audio recordings of calls placed to the police department by plaintiff's mother, father, and sister, to both 911 and the business number, through August of 2006;

13.   Copies of plaintiff's journal entries which she mentioned during her interview with the detective investigating this accusation;

14.   The plaintiff's autobiography which she mentioned during her interview with the detective;

15.   The audiovisual depiction of plaintiff's interview by the detective investigating the plaintiff's allegations against the individual defendant.

These have been produced pursuant to protective agreements between the parties, and their contents cannot be further described.   They will be shown to the magistrate during an *in camera* proceeding, should he so desire.

It is impossible in a matter such as this to construct a privilege inventory log without revealing the nature of the materials themselves.   They will be brought to the hearing of this matter and can be reviewed and decided by the magistrate as to

1  their discoverability.  The parties have agreed to this procedure,

2  as discussed in the appended declaration of defense counsel.

3       Defendant City of Oxnard cannot in this document describe the

4  nature of the items that would be implicated by plaintiff's

5  discovery request without revealing their contents.  Defendant is

6  perfectly comfortable bringing the items to the hearing of this

7  matter for the magistrate judge's review and ruling.  Counsel for

8  the other parties may be present during such an *in camera*

9  proceeding, as long as they are instructed to obey an order of

10  nondisclosure.

11       The plaintiff claims that the individual defendant sexually

12  violated her while in the course and scope of his employment as a

13  law enforcement officer.  He denies it.  Both parties agree that

14  there were no independent percipient witnesses to the alleged act.

15  The genetic evidence is not corroborative of the individual defen-

16  dant having consummated intimate relations with the plaintiff.

17       Involving non-party paramours of the individual parties would

18  only violate their privacy rights, as described in the preceding

19  discussion of the federal and state appellate authorities.  None of

20  these people is or is alleged to have been a witness to the

21  activity claimed by plaintiff to form the basis of her complaint.

22  None will be offering testimony as a witness to the event.  They

23  are therefore on the remotest periphery of relevance, if they are

24  relevant at all.  Whether such individuals engaged in intimate

25  physical liaisons with either of the individual parties is remote

26  from whether the defendant consummated an unwarranted sexual

27  invasion of the plaintiff as she alleges in this lawsuit.

28  / / /

1    The information sought is not reasonably calculated to lead to

2    the discovery of admissible evidence in this lawsuit.  It would not

3    be admissible in court in any event for a number of reasons.  Aside

4    from its irrelevance, it is violative of the rights of the un-

5    involved third parties and is rank character evidence.  Character

6    evidence is not admissible in a civil lawsuit.  The material sought

7    would be such in that the claim would be that because either of the

8    individual parties was allegedly intimately indiscriminate on some

9    other occasion, they must have done something wrong on the occasion

10   in question. This is the height of inadmissible character evidence.

11   Evidence of a person's character or a trait of his or her

12   character is not admissible for the purpose of proving that he or

13   she acted in conformity therewith on any particular occasion.

14   Fed R. Evid. 404(a).  The rule then provides three exceptions to

15   the prohibition, none of which are relevant here.  The rule is to

16   forbid introduction of character evidence to imply that people

17   acted in conformity with a past character trait on the occasion in

18   question.  The very purpose of character evidence is to suggest to

19   the jury that a person did indeed act in conformity with some

20   negative personality trait at the time of the alleged incident.

21   *United States v. Keiser*, 57 F.3d 847, 854 (9th Cir. 1995).  It is

22   not right to judge people by what they allegedly did in the past.

23   The issue is what they did on the occasion in question.  Triers of

24   fact cannot escape the tendency of judging parties by their past

25   behavior.  Even whether the parties knew of each other's character

26   at the time of the alleged act has no bearing on whether character

27   evidence should come in.  *Id.*

28   / / /

1    When the magistrate has conducted the *in camera* review of the

2  highly sensitive materials, defendant City of Oxnard is confident

3  that he will view the matter as defendant does — namely, that the

4  privacy rights of uninvolved persons must be respected by not being

5  revealed.

6                                    **IV.**

7                              <u>**CONCLUSION**</u>

8    The parties therefore join in requesting the Court to review

9  the stipulations, their arguments contained above, the appended

10 production classifications, and any declarations which shall be

11 appended hereto, and resolve their dispute *in camera*.

12

13 Dated:  May ____, 2008        _____

14                               ETAN Z. LORANT
                                 Attorney for Plaintiff
15

16 Dated:  May ____, 2008        _____

17                               JILL W. BABINGTON
                                 Attorney for Defendant MARTIN POLO
18

19 Dated:  May ____, 2008        _____

20                               JEFFREY HELD
                                 Attorney for Defendant CITY OF OXNARD
21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JEFFREY HELD**

**IN SUPPORT OF CITY OF OXNARD'S**

**ARGUMENT IN JOINT DISCOVERY STIPULATION**

I, Jeffrey Held, declare:

1.    I am an attorney admitted to practice law before all the courts of the State of California and the United States District Court, Central District of California.    I am employed as an attorney in the Law Offices of Alan E. Wisotsky, counsel of record for defendant City of Oxnard.

2.    I make this declaration based upon information which is personally known to me.  If called to testify as a witness to the information contained in this declaration, I would competently and truthfully do so under penalty of perjury of the laws of the United States of America.

3.    The subject matter of the items which the City of Oxnard declines to produce in response to plaintiff's discovery demands is so sensitive, involving sexual privacy issues of uninvolved non-party juvenile and adult persons, that counsel for the plaintiff and counsel for the individual defendant have agreed that they need not be made the subject of a privilege log, for to describe them would be to breach the privilege by describing and specifying the contents and identities of those involved.  It has therefore been agreed that such items will be brought to the hearing of this matter or to such other hearing as the magistrate judge may so direct for an *in camera* proceeding.

4.    The City of Oxnard has already provided large quantities of information and materials to the attorneys for the plaintiff and the individual defendant, these being:

1          (a)   One-page e-mail from B.E. to C.T. dated August 30,

2    2006;

3          (b)   A two-page memorandum from K.K. to S.B. and B.C.

4    dated   9/6/06;

5          (c)   A   compact   disc   containing   the   digital   audio

6    recording of the contact of 9/6/06 between plaintiff and officers

7    E. and K.;

8          (d)   A six-page memorandum from Officer E. to C.T., S.B.,

9    and B.C., memorializing Officer E.'s taking of a missing person's

10   runaway report concerning plaintiff on August 16, 2006, dated

11   September 12, 2006;

12         (e)   A   five-page   Oxnard   Police   Department   follow-up

13   report, RB #07-XXXXX, by S.S., being a transcription of the audio-

14   recorded   contact   between   Officers   E.,   K.,   and   plaintiff   on

15   September 9, 2006;

16         (f)   A transcript of the 2/12/07 interview of plaintiff

17   conducted by Oxnard Police Detective S.G. in a suburb of Salt Lake

18   City, Utah, at 9:49 a.m., 53 pages;

19         (g)   Laboratory reports from a company called Crime Scene

20   Technologies, Inc., under date of June 25, 2007, indicating that a

21   submitted textile cutting from plaintiff's panties contained a low-

22   level mixture of deoxyribonucleic acid of three male human beings,

23   analyzing and making conclusions; three pages;

24         (h)   A six-page laboratory report from Crime Scene Tech-

25   nologies, Inc., dated November 7, 2007, concerning two additional

26   textile cuttings, items 01E and 01F, which reveal deoxyribonucleic

27   acid genetic markers donated or contributed by four male human

28   beings;

1          (i)   A 14-page criminal investigation report of the
2   subject allegation by S.G.;

3          (j)   Multiple photographs of the alleged location of the
4   perpetrated molestation, taken in connection with the investiga-
5   tion, as well as photos of the police unit the individual defendant
6   was allegedly driving at the time of transporting the plaintiff to
7   the police department, and all photos of the plaintiff taken by the
8   police department;

9          (k)   All missing person or runaway reports concerning the
10  plaintiff in and through mid-August of 2006, including reports
11  numbered 06-XXXXX and 06-XXXXX;

12         (l)   Audio recordings of calls placed to the police
13  department by plaintiff's mother, father, and sister, to both 911
14  and the business number, through August of 2006;

15         (m)   Copies of plaintiff's journal entries which she
16  mentioned during her interview with the detective investigating
17  this accusation;

18         (n)   The plaintiff's autobiography which she mentioned
19  during her interview with the detective;

20         (o)   The audiovisual depiction of plaintiff's interview
21  by the detective investigating the plaintiff's allegations against
22  the individual defendant.

23     5.   The plaintiff contends that the individual defendant,
24  while in the course and scope of his duties as a law enforcement
25  officer for the City of Oxnard, committed sexual molestation of
26  her; the individual defendant and the entity defendant deny this
27  allegation in its entirety.

28  / / /

6.   The parties all agree that there were no independent percipient witnesses to the alleged sexual violation of the plaintiff by the individual defendant.

7.   Genetic evidence produced is not indicative of any contribution by the individual defendant and tends to exonerate him.

8.   Each and every item relevant to the plaintiff and the defendant has been produced, with the exception of items unique to the individual defendant, as to which he has lodged objection, so that these would need to reviewed and approved or disapproved for disclosure by the magistrate judge during the same *in camera* proceeding.

9.   The primary items falling into the latter descriptive category are the criminal investigation interview of the individual defendant and the *Lybarger-Gwillim* employment interview of the individual defendant, as well as business phone records.

10.   The items pertaining to potential intimate acts by the individual parties to this litigation involve third parties who are strangers to this litigation.  They can cast no light whatsoever on whether the individual defendant did or did not sexually violate the plaintiff as alleged in the complaint, yet the acts sought to be discovered lie at the core of the penumbral right of intimate privacy recognized by appellate authority, as can be demonstrated in the *in camera* review.  None of the uninvolved third persons whose intimate physical liaisons the municipality is bound at its peril to protect, nor any materials in which they are quoted or depicted, say anything whatsoever about storefront police station trysts or rendezvouses, the plaintiff and the individual

1  defendant's intimacy nor intimate association of the individual

2  defendant with minors.

3       11.  The plaintiff's allegations and this litigation have

4  drawn intense local media scrutiny in the Ventura County Star.

5  Several front page articles have appeared within the last few

6  months describing detailed developments in this matter.

7       I declare under penalty of perjury under the laws of the

8  United States of America that the foregoing is true and correct.

9       Executed on May ____, 2008, at Oxnard, California.

10

11                              _____

12                              JEFFREY HELD

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28