Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:    (805) 278-0920
Fax:    (805) 278-0289
E-mail:  lawyers@wisotskylaw.com

Attorneys for Defendant CITY OF OXNARD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.W., a Minor, through her Guardian Ad Litem, Mark Wilson; MARK D. WILSON, as Guardian Ad Litem of J.W., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF OXNARD, MARTIN POLO, and DOES 1 through 10, Inclusive, <br><br> Defendants. | No. CV 07-06191 GPS (SHx) <br><br> **DEFENDANT CITY OF OXNARD'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> PTC  :  September 22, 2008 <br> Trial:  October 14, 2008 |

In compliance with Central District Local Rule 16-4, defendant CITY OF OXNARD now submits the following memorandum of contentions of fact and law.

**1.    Claims and Defenses — 16-4.1**

(a)    *Summary statement of claims*:  The plaintiff claims that the defendant police officer raped her on a single occasion on August 15, 2006, at the Oxnard Police Department satellite store-front station at Victoria and Hemlock.  Both defendants deny that the alleged rape or any sexual violation of the plaintiff by the individual defendant ever occurred.

1   (b)   *Elements required to establish plaintiff's claims*:   The

2   plaintiff must prove by a preponderance of the evidence that she

3   was raped on August 15, 2006, by the individual defendant.

4   (c)   Inapplicable — memorandum submitted by defendant.

5   (d)   *Summary statement of affirmative defenses:*   Defendant

6   City of Oxnard contends that the individual defendant did not rape

7   or otherwise sexually violate the plaintiff at all, including on

8   the date she claims, August 15, 2006.   Defendant has a host of

9   persuasive evidence indicating that the plaintiff could not

10  possibly meet her burden of proof.   A synopsis follows.

11      The incident was, by the plaintiff's own account, unwitnessed

12  by any independent witness.   She claims that only she and the

13  individual defendant were present during his sexual violation of

14  her.   The individual defendant has adamantly denied committing the

15  offense, not only in discovery in this case, but also in his

16  criminal investigation interview and in two so-called "cool calls."

17  Therefore, the best that the plaintiff can hope for is a 50 percent

18  proof under the "he said, she said" principle.

19      A second disproof of the alleged sexual violation is the

20  plaintiff's own words of denial.   On August 27, 2006, 12 days after

21  the alleged rape, the plaintiff was asked by an admitting psychi-

22  atrist at a mental health facility whether she had ever been

23  physically or sexually abused.   That doctor was Atman Reyes.   Her

24  answer to his question was "no."   Therefore, defendants can prove

25  that the plaintiff denied any sexual abuse at all only 12 days

26  after the alleged incident to a person whom she should have

27  trusted, since he was a neutral and important authority figure.

28  / / /

2

1  The reason for her psychiatric admission on that date was her

2  guardian's threat to decapitate her.

3      Defendants can also disprove the occurrence of the alleged

4  incident by very strongly overwhelming physical evidence, forensic

5  serological data.  The plaintiff testified in deposition that when

6  the individual defendant had sexual intercourse with her, he was

7  not wearing a condom.  She testified that she felt liquid seeping

8  out of her vagina.  She put on underwear which she did not then

9  launder but, rather, placed it in her mother's so-called mending

10 pile.  When taken by the police later on to assay its genetic

11 contents, comparing it against DNA evidence from the individual

12 defendant, his genetic markers were not found to be present.  Of

13 the five textile cuttings from plaintiff's unwashed underwear,

14 defendant Polo was absolutely excluded from three and was probably

15 not the donor or contributor of the other two, although those tests

16 were not positively conclusive.  The testing must have been valid,

17 because the plaintiff claims to have had multiple sexual partners

18 in the few days following the alleged rape, and the forensic

19 serologist, Kelly Brockhohn, did find male genetic markers contri-

20 buted, no doubt, by reproductive ejaculate, but there was not one

21 single genetic marker or any genetic contribution from the indi-

22 vidual defendant.

23     The plaintiff has admitted in deposition that she has lied on

24 many occasions to adult authority figures.  She also testified on

25 page 103 of her deposition that she occasionally wonders whether

26 she imagined the entire sexual violation issue by the defendant.

27 She has testified that she craves male attention in general and

28 adult male attention in particular.  For example, she testified

3

1  that she despises her father's girlfriend, even though the girl-
2  friend has been very nice to her and has never done anything wrong.
3  Plaintiff just hates her because she competes for her father's
4  attention.

5      Plaintiff's life both before and after the alleged incident
6  was unbelievable for anyone, especially a 12-year-old girl.  She
7  was getting all D's and F's in her classes even though she has an
8  extremely high IQ.  She was an extremely heavy drug user, both
9  illegal and prescription.  She stole alcohol from her parents and
10 would get so drunk that she would pass out or vomit.  Her life both
11 before and after the alleged date of the incident was comprised of
12 a series of multiple indiscriminate premarital physical liaisons,
13 virtually nonstop sex with as many different boys as she could
14 possibly find.

15     Plaintiff has accused her mother of beating her severely and
16 accused her father of threatening to kill himself and to kill her.
17 She has also testified that she engaged in multiple indiscriminate
18 physical liaisons with as many boys as she could find.  She had a
19 disordered mental state and a disordered life.  It is unlikely that
20 a jury could credit her statement, most likely finding that she
21 either contrived or imagined the accusation.

22     (e)  No affirmative defenses or counterclaims are asserted.

23     (f)  *Key evidence relied upon in support of defense:*  Defen-
24 dant incorporates its statement in the previous subdivision.  The
25 items of fact necessary to establish the nonexistence of the accu-
26 sation are the same for both purposes.

27     (g)  Inapplicable.

28 / / /

1       (h)   Defendant City of Oxnard has anticipated 15 evidentiary

2    issues.  These are submitted as 15 separate motions in limine filed

3    concurrently with this motion.

4    **2.    Bifurcation of Issues — 16-4.3**

5       Defendant City of Oxnard has concurrently filed a separate

6    motion for bifurcation of issues.  It is incorporated by reference

7    hereat as though fully set forth.  It seeks a separation of the

8    trial into two phases.  The Phase I trial would answer the question

9    of whether the rape did or did not occur and assign compensatory

10   damages if it did.  The Phase II trial would take up any necessary

11   *Monell*, entity liability issues and determine the suitability and

12   amount of punitive damages.

13   **3.    Jury Trial — 16-4.4**

14      The issues to be resolved are all triable to a jury as a

15   matter of right.  The jury must determine whether the alleged

16   sexual violation claimed by plaintiff occurred and, if so, the

17   amount of damages.

18   **4.    Attorneys' Fees — 16-4.5**

19      Plaintiff claims that fees are recoverable under 42 U.S.C.

20   §1983 and §1988.

21   **5.    Abandonment of Issues — 16-4.6**

22      No issues have been abandoned, to the City of Oxnard's

23   knowledge.

24   **6.    Witness List — 16-5**

25      Defendant City of Oxnard has concurrently served and filed

26   under separate pleading cover a witness list containing the infor-

27   mation demanded by Federal Rule of Civil Procedure 26(a)(3)(A) and

28   (B).  There are 23 witnesses.

**7.    Exhibits — 16-6**

Defendants have submitted to plaintiff a proposed joint exhibit list.  Defendants have included in it all exhibits which they deem necessary to try the case to the jury.

**8.    Evidentiary Issues**

Defendant City of Oxnard has concurrently filed 15 separate motions in limine.  These address all the evidentiary issues with the City can anticipate in advance would arise during the trial of this action.

Dated:  August _____, 2008

                             LAW OFFICES OF ALAN E. WISOTSKY

                             By:_____
                                 JEFFREY HELD
                                 Attorneys for Defendant,
                                 CITY OF OXNARD