1  **STEVEN J. ROTHANS – State Bar No. 106579**
   **JILL W. BABINGTON – State Bar No. 221793**
2  **CARPENTER, ROTHANS & DUMONT**
   **888 S. Figueroa Street, Suite 1960**
3  **Los Angeles, CA  90017**
   **(213) 228-0400**
4  **(213) 228-0401 [Fax]**

5  Attorneys for Defendant, OFFICER MARTIN POLO, a public employee

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | J.W., a minor, through her guardian ad ) | Case No.: CV07-06191 GPS (SHx)
   | litem, MARK WILSON, |

12 |              | ) | **MEMORANDUM OF**
                   ) | **CONTENTIONS OF FACT AND**
13 |   Plaintiff,  | ) | **LAW BY DEFENDANT OFFICER**
                   ) | **MARTIN POLO**
14 |   vs.         | )

15 | CITY OF OXNARD, MARTIN POLO, ) | **[U.S. Dist. Ct. – Cent. Dist. L.R. 16-3]**
   | and DOES 1 through 10, inclusive, )

16 |   Defendants. | ) | **Pre-Trial Conference**
                   ) | DATE:  September 22, 2008
17 |              | ) | TIME:  11:00 a.m.
                   ) | COURTROOM:  7
18 |              | )
                   ) | Discovery Cut-Off:  September 3, 2008
19 |              | ) | Pre-Trial Conference:  Sept. 22, 2008
                   ) | Trial:  October 14, 2008
20 |              | )
                   ) | **Honorable George P. Schiavelli**
21

22      COMES NOW Defendant, OFFICER MARTIN POLO, a public employee,

23 and pursuant to U.S. District Court – Central District Local Rule 16-3, hereby

24 submits his Memorandum of Contentions of Fact and Law:

25

26 ///

27 ///

28 ///

                              -1-

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### I.   INTRODUCTION

In this lawsuit, 14-year-old Plaintiff J.W. claims that when she was 12 years old, she was raped by Oxnard Police Officer Martin Polo at a police substation in Oxnard.  Aside from the plaintiff's incredible and ever-changing memory (shortly after the incident supposedly occurred, the plaintiff denied any history of sexual abuse; then, in deposition, the plaintiff admitted that she has wondered whether she had "imagined" the alleged incident), there is no evidence to support the plaintiff's allegations.

Defendant Polo vehemently denies the plaintiff's allegations.

### II.   FACTUAL CONTENTIONS

On August 10, 2006, 12-year-old J.W. ran away from home.  Her mother did not report her as missing until two days later, on August 12, 2006, when the mother spoke with Officer Martin Polo at the Oxnard Police Department.  According to J.W.'s mother and half-sister, when Officer Polo came to their home to take the runaway report, he gave them a business card, wrote his duty cell phone number on the card and instructed them to contact him if they became aware of any further information concerning J.W.'s whereabouts.

Officer Polo took the information provided by J.W.'s mother, contacted J.W.'s known acquaintances, and located J.W. two days later on August 14, 2006.  Officer Polo called J.W.'s mother and advised her that he had located J.W.  Officer Polo drove J.W. to the Oxnard Police Department, where she was picked up by her mother.  Like he had done with J.W.'s mother and half-sister, Officer Polo gave J.W. his duty cell phone number and instructed her to call him if she was thinking about running away again.  In deposition, J.W. confirmed that during her interaction with Officer Polo on August 14, 2006, Officer Polo did not do or say anything she found to be inappropriate.  (In fact, J.W. testified that she thought Officer Polo was "nice"

1   because he let her keep her cigarettes.)

2       According to J.W., the following day – August 15, 2006 – she got into a fight

3   with her mother over what she was wearing.  J.W.'s mother believed J.W. was

4   dressed too provocatively and was wearing too much makeup.  Upset with her

5   mother and apparently contemplating another runaway, J.W. called Officer Polo's

6   duty cell phone number.

7       J.W. testified that she called Officer Polo sometime in the morning and told

8   him that she was going to runaway.  J.W. testified that Officer Polo told her to walk

9   to the 7-Eleven store near her home and that he would meet her there.  J.W. claims

10   that Officer Polo picked her up and drove her to the "Beat 21 storefront" (an

11   unmanned OPD substation located in a strip mall on the corner of Victoria Avenue

12   and Hemlock that is used as a satellite office for Beat 21 officers).  J.W. testified that

13   upon arrival to the storefront, Officer Polo raped her.

14       Officer Polo vehemently denies these allegations.  In fact, Officer Polo never

15   saw J.W. again after he had retrieved her from her friend's house in Port Hueneme

16   and returned her to her mother.

17

18   **III.**   **LEGAL BRIEF**

19       **A.**    **Issues of Law**

20       In this lawsuit, the plaintiff has asserted seven causes of action against the

21   City of Oxnard and Defendant Polo:

22       (1)    Violation of Fourth Amendment rights (unlawful seizure) under 42

23   U.S.C. § 1983 (against Polo and City);

24       (2)    Assault and battery (against Polo and City);

25       (3)    Negligence (against Polo and City);

26       (4)    Intentional infliction of emotional distress (against Polo and City);

27       (5)    Violation of civil rights under California <u>Civil Code</u> § 51 (against

28   Polo and City);

1    (6)    Violation of civil rights under <u>California Civil Code</u> § 52.1 (against
2 Polo and City);

3    (7)    Negligent hiring, retention and supervision (against City only).

4    From Defendant Polo's perspective, the sole issue in this case is the disputed
5 factual issue of whether he raped the plaintiff.

6

7    **B.    <u>Evidentiary Problems</u>**

8    Defendant Polo will address his anticipated evidentiary problems in the
9 motions in limine filed concurrently herewith, as well as several of the motions
10 filed by the City of Oxnard, all of which will be heard at the Final Pre-Trial
11 Conference.  The items of evidence Defendant Polo seeks to have excluded include
12 the following:

13    1.    Evidence concerning videos, DVDs, photographs or other
14 audio/visual recordings located during the execution of the search warrant of
15 Defendant Polo's home that do not depict the plaintiff.  The disclosure of any such
16 items – particularly in a public forum – would constitute a gross invasion of
17 privacy of the individuals in those videos.  Moreover, such materials are nothing
18 more than inadmissible character evidence, lack any probative value in this case
19 and would simply be offered to inflame and prejudice the jury.  <u>See</u>, <u>e.g.</u>, FED. R.
20 EVID. 401, 403, 404.

21    2.    Evidence, including, but not limited to testimony of a woman, A.J., of
22 allegations that Defendant Polo has engaged in sexual intercourse at an Oxnard
23 Police Department substation or storefront.  Again, admission of such evidence
24 into a public trial would constitute a gross invasion of privacy of Defendant Polo.
25 Moreover, such evidence is nothing more than inadmissible character evidence,
26 lacks any probative value in this case and would simply be offered to inflame and
27 prejudice the jury.  <u>See</u>, <u>e.g.</u>, FED. R. EVID. 401, 403, 404.  In addition, because it
28 would be necessary to introduce other evidence, including testimony and

-4-

1  documents, to impeach the credibility of any witness testifying to such an

2  allegation, such evidence would create an undue delay in the trial of this matter,

3  mislead the jury, and waste the Court's time.  <u>See</u>, <u>e.g.</u>, FED. R. EVID. 403.

4      3.      Evidence, including, but not limited to testimony of a woman, A.J., of

5  allegations that *other* Oxnard Police Department officers have engaged in sexual

6  intercourse at an Oxnard Police Department substation or storefront.  Again,

7  admission of such evidence into a public trial would constitute a gross invasion of

8  privacy of officers who are not parties to this lawsuit.  Moreover, such evidence is

9  nothing more than inadmissible character evidence, lacks any probative value in

10  this case and would simply be offered to inflame and prejudice the jury.  <u>See</u>, <u>e.g.</u>,

11  FED. R. EVID. 401, 403, 404.  In addition, because it would be necessary to

12  introduce other evidence, including testimony and documents, to impeach the

13  credibility of any witness testifying to such an allegation, such evidence would

14  create an undue delay in the trial of this matter, mislead the jury, and waste the

15  Court's time.  <u>See</u>, <u>e.g.</u>, FED. R. EVID. 403.

16      4.      Any expert opinion or testimony from the plaintiff, where the plaintiff

17  did not make any timely disclosure of expert witnesses as required by Federal

18  Rules of Civil Procedure, Rule 26(a)(2).

19      5.      Expert testimony or other evidence that, on occasion, victims of rape

20  or other sexual abuse do not immediately report the rape or abuse.  The plaintiff

21  did not make any timely disclosure of expert witnesses as required by Federal

22  Rules of Civil Procedure, Rule 26(a)(2) and is, therefore, precluded from offering

23  any such expert testimony in this regard.  Furthermore, any attempt by the plaintiff

24  to elicit such evidence through the testimony of another witness would constitute

25  improper expert opinion.  <u>See</u> FED. R. EVID. 701.

26      6.      Evidence concerning Defendant Polo's sexual reputation or rumors,

27  including use of the term "hound dog" in reference to Defendant Polo.  Whether or

28  not Defendant Polo may or may not have had a reputation as being a "lady's man,"

-5-

1   "hound dog," "womanizer," or other similar characterization is immaterial to

2   whether or not Defendant Polo had nonconsensual intercourse with a 12-year-old

3   girl.  Furthermore, such evidence would clearly be offered to confuse, mislead,

4   inflame and impassion the jury.   See, e.g., FED. R. EVID. 401, 403, 404.

5        7.    Evidence pertaining to employment actions that may or may not have

6   been taken against Defendant Polo by the Oxnard Police Department following the

7   plaintiff's allegations.  Such evidence lacks any probative value, and would simply

8   be offered to prejudice and inflame the jury. See, e.g., FED. R. EVID. 401, 403.

9        8.    Evidence pertaining to prior lawsuits, discipline or complaints (if any)

10   against Defendant Polo.  Such evidence lacks any probative value, would simply

11   be offered to prejudice and inflame the jury and is inadmissible character evidence.

12   See, e.g., FED. R. EVID. 401, 403, 404.

13        9.    Evidence that *other* police officers who worked with Defendant Polo

14   in the Beat 21 storefront or substation may or may not have been disciplined

15   following an investigation that commenced because of the plaintiff's allegations.

16   Such evidence lacks any probative value as to the central issue in this lawsuit,

17   namely, whether Defendant Polo had nonconsensual intercourse with J.W.  That

18   other officers at the Oxnard Police Department may have been disciplined for

19   reasons unrelated to J.W.'s allegations is immaterial and would simply be offered

20   to prejudice and inflame the jury. See, e.g., FED. R. EVID. 401, 403.

21        10.   Evidence of a "Brady letter" pertaining to Defendant Polo.  This letter

22   constitutes inadmissible hearsay for which there is no exception. Furthermore, the

23   letter lacks any probative value as to the central issue in this case, i.e. whether

24   Defendant Polo raped J.W.  Introduction of such evidence would unfairly prejudice

25   the individual defendant, confuse the issues, mislead the jury and, because the

26   evidence would necessitate a "mini-trial" concerning the matters set forth within

27   the letter, the evidence would unduly delay the trial and waste time. See, e.g., FED.

28   R. EVID. 401, 403, 801.

-6-

1        11.  Evidence concerning an alleged complaint by an unidentified police

2   cadet about Defendant Polo.  Such evidence is inadmissible hearsay (and, indeed,

3   hearsay within hearsay).  Furthermore, the evidence is more prejudicial than

4   probative and is nothing more than rank character evidence.  See, e.g., FED. R.

5   EVID. 401, 403, 404, 801.

6        12.  The use of the term "suspect" vis-à-vis Defendant Polo.

7   Characterizing Defendant Polo as a "suspect" is inflammatory and unfairly

8   prejudicial because it stigmatizes Defendant Polo with a criminal label and

9   suggests that his commission of the alleged crime is a foregone conclusion. See,

10  e.g., FED. R. EVID. 403.

11      In addition to these twelve motions in limine, Defendant Polo joins in the

12  motions in limine filed by Defendant City of Oxnard to exclude the following

13  items of evidence:

14       1.  Defendant Polo's compelled administrative interview;

15       2.  A poor-quality photocopy of a pieced-together torn note located in the

16  Beat 21 substation with unknown handwriting;

17       3.  Other "bad acts" allegedly attributable to Defendant Polo;

18       4.  Defendant Polo's profanity and vulgar language during the criminal

19  and administrative interviews.

20

21  **IV.   TRIFURCATION OF ISSUES**

22      In this lawsuit, the plaintiff alleges that Defendant Polo violated her civil

23  rights by raping her and that the City of Oxnard maintained a custom, practice or

24  policy that led to this violation.  In addition, the plaintiff asserts that, in

25  purportedly raping her, Defendant Polo committed a variety of state torts for which

26  the City of Oxnard should be vicariously liable.  Additionally, the plaintiff seeks

27  punitive damages from Defendant Polo.

28  ///

1    Federal Rules of Civil Procedure, Rule 42, provides, in part, "The court, in

2    furtherance of convenience or to avoid prejudice, or when separate trials will be

3    conducive to expedition and economy, may order a separate trial of any claim,

4    cross-claim, counterclaim, or third-party claim, or of any separate issue or of any

5    number of claims, cross-claims, counterclaims, third-party claims, or issues,

6    always preserving inviolate the right of trial by jury as declared by the Seventh

7    Amendment to the Constitution or as given by a statute of the United States." FED.

8    R. CIV. P. 42(b).

9    In determining whether to bifurcate a trial, the court should consider four

10    primary factors: convenience; prejudice; judicial economy; and, reducing the risk

11    of confusion.  See Richmond v. Weiner, 353 F.2d 41 (9th Cir. 1965).

12    For the reasons set forth below, Defendant Polo respectfully request that the

13    Court trifurcate this action into the following three phases:  (1) determination of

14    whether Defendant Polo raped the plaintiff; (2) determination of whether a custom,

15    practice or policy at the City of Oxnard led to the alleged rape and/or was

16    negligent in the hiring, supervision and retention of Officer Polo; and, (3)

17    determination of whether evidence exists to support an award of punitive damages

18    against Defendant Polo.  Trifurcating the trial in this manner would serve the four

19    factors outlined in Richmond, namely, convenience, prejudice, judicial economy

20    and reducing the risk of confusion.

21

22    **A.    Constitutional Violation versus Municipal Liability**

23    As a predicate to the plaintiff's Monell claim (or any state tort claim), the

24    plaintiff must first establish that she suffered a constitutional violation (i.e. that she

25    was raped).  Berry v. Baca, 379 F.3d 764, 767 (9th Cir. 2004).  If – and only if –

26    the plaintiff can convince a jury that this did, in fact, occur, then the plaintiff can

27    advance to the next phase of her claim against the City of Oxnard for negligent

28    hiring, supervision or retention of Defendant Polo or her claim for municipal

-8-

1 │ liability under <u>Monell</u>: establishing the existence of a custom, practice or policy

2 │ that led to the constitutional violation.  <u>Menotti v. City of Seattle</u>, 409 F.3d 1113,

3 │ 1147 (9th Cir. 2005).

4 │   Federal courts routinely bifurcate trials on Section 1983 claims and hear the

5 │ claims alleging a constitutional violation first, before turning to the issue of

6 │ municipal liability.  <u>See, e.g.</u>, <u>Santos v. Gates</u>, 287 F.3d 846, 851 (9th Cir. 2002);

7 │ <u>Ruvalcaba v. City of Los Angeles</u>, 167 F.3d 514, 518 (9th Cir. 1999); <u>Quintilla v.</u>

8 │ <u>City of Downey</u>, 84 F.3d 353 (9th Cir. 1996).  Bifurcation of these issues serves to

9 │ prevent prejudice to both the government entity and the individual entity by

10 │ clarifying the very distinct basis of liability (individual liability versus municipal

11 │ liability) and precluding a finding against the individual defendant based upon the

12 │ collective conduct of the government entity.  <u>See Quintilla</u>, 84 F.3d 356

13 │ ["bifurcation enable[s] the court to separate the questions regarding the

14 │ constitutionality of the [] officers' actions from the questions regarding the . . .

15 │ city's liability under <u>Monell</u>."].)

16 │   In bifurcating Section 1983 claims, federal courts are concerned not only

17 │ about judicial economy, but potential prejudice to the defendants. <u>Id.</u>  Under

18 │ Section 1983 and <u>Monell</u>, a public entity is not liable for Section 1983 damages

19 │ unless a fact finder first concludes that an individual officer, acting pursuant to

20 │ policy, inflicted constitutional harm.  <u>See City of Los Angeles v. Heller</u>, 475 U.S.

21 │ 796 (1986) (per curiam).  Recognizing the prejudice to the defendants that would

22 │ occur if the claims were tried together, the Supreme Court explained in <u>Heller</u>, "If

23 │ a person has suffered no constitutional injury at the hands of [a] individual police

24 │ officer, the [conduct of the department] is quite beside the point." <u>Id.</u> at 799

25 │ (emphasis added).

26 │   Indeed, by allowing the plaintiff to focus on purported customs, practices,

27 │ policies or training at the City, the plaintiff will confuse the jury as to the issues

28 │ and the standards of liability for individuals versus municipalities under Section

-9-

1   1983.  Trying the constitutional violation issue under Section 1983 before and

2   apart from that of municipal liability serves to minimize prejudice to Defendant

3   Polo and the City.

4

5        **B.**     **Exemplary Damages**

6        With respect to the plaintiff's request for exemplary (or punitive) damages

7   against Defendant Polo, it is respectfully submitted that bifurcation is necessary to

8   avoid prejudice to the individual defendant.  If a jury concludes that the individual

9   officer did not rape the plaintiff, it would be unnecessary for the jury to hear and

10  consider evidence relative to the propriety and amount of any proposed punitive

11  damages, thus promoting convenience and judicial economy.  <u>See</u> <u>Figueroa v.</u>

12  <u>Gates,</u> 207 F.Supp.2d 1085 (C.D. Cal. 2002) (finding that bifurcation of punitive

13  damages from liability phase of trial will promote convenience and efficiency to

14  try the individual liability issues first).

15       Moreover, hearing evidence relative to punitive damages during the liability

16  phase of the trial would severely prejudice Defendant Polo in that liability would

17  seem a foregone conclusion and there is the significant likelihood that the jurors

18  would confuse the liability issues with the punitive damages issues.

19

20  **V.    JURY TRIAL**

21       The plaintiff and the defendants have made timely demands for a jury trial.

22  All issues brought against these defendants are triable to a jury.

23

24  **VI.   ATTORNEY'S FEES**

25       Should Defendant Polo prevail in this civil litigation, he will seek an award

26  of attorney's fees from the court, pursuant to 42 U.S.C. § 1988(b) on the basis that

27  this action was frivolous and without merit.  <u>See, e.g.,</u> <u>Legal Services of Northern</u>

28  <u>California, Inc. v. Arnett,</u> 114 F.3d 135 (9th Cir. 1997).

-10-

MEMORANDUM OF CONTENTIONS OF FACT AND LAW
BY DEFENDANT OFFICER MARTIN POLO

1  **VII.   ABANDONMENT OF ISSUES**

2        At this time, Defendant Polo does not assert that any issues have been

3  abandoned, other than those matters that are the subject of defendant's motions in

4  limine.

5

6  DATED:  August 28, 2008              CARPENTER, ROTHANS & DUMONT

7

8                                      By: _____

9                                          STEVEN J. ROTHANS

10                                         JILL W. BABINGTON
                                           Attorneys for Defendant,

11                                         OFFICER MARTIN POLO,
                                           a public employee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF CONTENTIONS OF FACT AND LAW
BY DEFENDANT OFFICER MARTIN POLO